UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

DIRK ALAN HARTWIG,                                   CIVIL NO. 07-2402 (DSD/JSM)

      Petitioner,

v.                                                                       <u>REPORT AND RECOMMENDATION</u>

STATE OF MINNESOTA,

      Respondent.

JANIE S. MAYERON, U.S. Magistrate Judge

This matter is before the undersigned United States Magistrate Judge on Petitioner's application for habeas corpus relief under 28 U.S.C. § 2254 [Docket No. 1], and upon Respondent's Answer and Motion to Dismiss Petition for Writ of Habeas Corpus [Docket No. 5]. This matter was decided upon the written submissions of the parties. The Petitioner appears <u>pro se</u>. Respondent appears by Kimberly Parker, Esq.

This matter has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 (b)(1)(B).

For the reasons discussed below, it is recommended that Petitioner's application for habeas corpus relief under 28 U.S.C. § 2254 [Docket No. 1] be denied, and that Respondent's Answer and Motion to Dismiss Petition for Writ of Habeas Corpus [Docket No. 5] be granted.

## I.   BACKGROUND[1]

On March 31, 2004, Detective Modjeski received a phone call from a confidential reliable informant ("CRI") informing him that there was a lot of dope at Roger Peters property. The CRI also told Detective Modjeski that Petitioner was cooking

---

[1]   These facts were obtained from Appellant's Brief to the Minnesota Court of Appeals, dated January 30, 2006.

methamphetamine at the property.  On January 14, 2004, the same CRI had informed Detective Modjeski that Petitioner was living at the Peters property and that he was a big methamphetamine cook.  Two years prior, the same CRI had also informed Detective Modjeski that Petitioner had been living at the Peters property cooking methamphetamine.  Deputy Joe Schneider informed Detective Modjeski that on January 26, 2004, Petitioner was present at the Peters property.

On March 31, 2004, Deputy Weinzierl received a phone call from an individual who had previously reported his feed mixer stolen.  The individual indicated that the stolen feed mixer was located on the Peters property.  Deputy Weinzierl contacted Detective Modjeski with this information.  Detective Modjeski, Deputy Weinzierl and Officer Brad Modjeski went to the Peters property around 2:26 p.m.  Detective Modjeski went to the door of a white camper where he knew Peters was residing.  He knocked, but there was no answer.  On the ground near the trailer, Detective Modjeski noticed an empty can of starting fluid and a pop bottle cap with a hole in the top.  Around this time, Petitioner's girlfriend approached the officers from the back of the property carrying two empty plastic jugs, which she claimed to be carrying because she was retrieving water for Peters and his pets.  The officers found this suspicious because there was no running water on the property.  When they asked her where Peters was, she opened the camper and yelled inside and received no response.  Later, she said she thought Peters was in Rochester but that he was supposed to pick her up; she also mentioned that Petitioner may have been with Peters.

The officers then heard a noise that sounded like banging steel or someone tripping over something coming from the back of the property.  Petitioner's girlfriend denied there was anyone else present on the property and claimed there were always

2

random noises because it was a junkyard.  Petitioner's girlfriend claimed she did not know where Petitioner was.

Petitioner's girlfriend eventually gave the officers Peters' cell phone number. When Deputy Weinzierl called Peters and identified himself, Peters hung up and would not answer the phone when Deputy Weinzierl attempted to call him back.

As the officers continued to speak with Petitioner's girlfriend, her stories changed and she became nervous.  While speaking to her, the officers smelled the odor of cat or dog urine coming from the back of the property.

Detective Modjeski went to the feed mixer and verified that the serial number was the same as the feed mixer that was reported stolen.  In an attempt to locate Peters or anyone else that might have information regarding the stolen property, Detective Modjeski and Deputy Weinzierl walked toward a new camper on the property they had never seen before.  As they walked toward the camper, they noticed three burn piles with numerous burnt blister packs of pseudoephedrine and cans of starting fluid.  From their experience, the officers identified these items as consistent with methamphetamine manufacturing.  They continued past the new trailer and towards a brown trailer.

As he approached the brown trailer, Detective Modjeski noticed modifications to the trailer that had not been there in the past, including power lines and a blue tarp covering the doorway.  As they approached the camper, the smell of ether or solvents increased.  When Detective Modjeski lifted the tarp, the smell became stronger.  He approached the door, knocked, and yelled "Sheriff's Department."  He heard movement inside, but no one came to the door.  Because of the smell, Detective Modjeski knew there was a methamphetamine lab inside and opened the door for safety reasons.

Once inside the brown trailer, Detective Modjeski noticed Petitioner reach into a wooden box and that Petitioner's hand was on a fanny pack. Detective Modjeski asked Petitioner to exit the trailer, and Petitioner complied. Deputy Weinzierl, who had been waiting outside, asked Petitioner for identification and Petitioner told him it was in his fanny pack. As Detective Modjeski was clearing the trailer, he noticed a zip lock baggie with a tannish powder that he recognized as methamphetamine sitting on a table near where Petitioner was sitting. Detective Modjeski also observed jugs, bowls, containers of liquids, coffee filters and tubing, and the odor of ether and solvents was so overpowering that he had to leave the residence. Detective Modjeski seized Petitioner's fanny pack, which contained syringes, spoons with burnt substances on them and Q-tips inside.

After Petitioner and his girlfriend were taken into custody, Detective Modjeski contacted an assistant county attorney and another detective to obtain a search warrant based on his discovery. The warrant was signed by Wabasha County Judge Terrence Walters at 6:22 p.m. and executed at 6:43 p.m. that same day.

In January 2005, Petitioner was found guilty by a Wabasha County jury of one count of first-degree controlled substance crime for manufacturing methamphetamine and one count of second-degree controlled substance crime for possessing methamphetamine. Petitioner was sentenced to 153 months for the manufacturing offense, and to 104 months for the possession offense to be executed concurrently.

Following his trial and conviction, Petitioner appealed to the Minnesota Court of Appeals, arguing that (1) the police entered his trailer without a warrant and without a valid exception to the warrant requirement; and (2) his offenses constituted a single behavioral incident for which only one sentence may be imposed. The Court of Appeals

affirmed Petitioner's conviction on November 14, 2006.   On December 14, 2006, Petitioner sought review of the Court of Appeals decision, which was denied by the Minnesota Supreme Court on January 16, 2007.

On May 22, 2007, Petitioner filed his Petition for Habeas Corpus Relief in this Court.   Petitioner cites two grounds for relief: (1) the state violated his Fourth Amendment and Minnesota constitutional rights against illegal search and seizure when police entered his trailer without a warrant and without a valid exception to the warrant requirement, and (2) the trial court violated the Double Jeopardy Clause of the Fifth Amendment and the Fourteenth Amendment by imposing two separate sentences for his crimes where his offenses constituted a single behavioral incident.  Petition, ¶ 12A and B [Docket No. 1].

In response to Petitioner's application for a writ of habeas corpus, Respondent argues that Petitioner's Fourth Amendment claim is not properly before this Court because he had the opportunity to litigate those claims, and that Petitioner failed to present a federal constitutional sentencing claim to the Minnesota Supreme Court. Resp. Mem., pp. 4-5.

## II.   DISCUSSION

### A.   Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs a federal court's review of habeas corpus petitions filed by state prisoners.  Section 2254 of the AEDPA provides that a district court will entertain a petition for writ of habeas corpus submitted by a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

In addition, 28 U.S.C. § 2254 provides that a habeas corpus petition:

shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;  or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Court of Appeals for the Eighth Circuit has described the review under § 2254(d): under the "contrary to" clause of § 2254(d)(1), the writ may be granted if the state court arrived at a conclusion opposite to that reached by the United States Supreme Court on a question of law or decided a case differently than the Supreme Court has on a set of materially indistinguishable facts.  See Copeland v. Washington, 232 F.3d 969, 973 (8th Cir. 2000) (citing Williams v. Taylor, 529 U.S. 362 (2000)). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identified the correct governing legal principle, but unreasonably applied that principle to the facts of the prisoner's case.  See Copeland, 232 F.3d at 973.

Therefore, "[a] federal court may not grant a petition under 28 U.S.C. § 2254 unless the court concludes that the state court adjudication of the claim 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the [United States] Supreme Court . . . or . . . resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Lee v. Gammon, 222 F.3d 441, 442 (8th Cir. 2000) (citing 28 U.S.C. § 2254(d); Williams, 529 U.S. at

362).   Under this standard, the federal court "must deny a writ – even if we disagree with the state court's decision – so long as that decision is reasonable in view of all the circumstances."   May v. Iowa, 251 F.3d 713, 716 (8th Cir. 2001) (citing Williams, 529 U.S. at 409-13).

### B.   Petitioner's Fourth Amendment Claim

The Court finds that Petitioner's Fourth Amendment claim is not properly before this Court.  Fourth Amendment claims are not cognizable in federal habeas proceedings if the state provided the petitioner an opportunity for the full and fair litigation of such claims.  See Stone v. Powell, 428 U.S. 465, 494 (1976); see also Palmer v. Clarke, 408 F.3d 423, 437 (8th Cir. 2005) (same) (citation omitted).   "The Eighth Circuit uses a two-part test to determine if a full and fair opportunity to litigate a claim has been provided."  Wilson v. State, No. Civ. 00-1194 (JRT/JGL), 2002 WL 1752208 at *2 (D.Minn. July 29, 2002) (citing Willett v. Lockhart, 37 F.3d 1265 (8th Cir. 1994)).   In this regard, "a Fourth Amendment habeas corpus claim is barred by Stone v. Powell unless: 1) 'the state provided no procedure by which the prisoner could raise his Fourth Amendment claim' or 2) 'the prisoner was foreclosed from using that procedure because of an unconscionable breakdown in the system.'"  Wilson, 2002 WL 1752208 at *2 (quoting Willett, 37 F.3d at 1273); see also Palmer, 408 F.3d at 437.  As to the first part of this test, the Eighth Circuit has stated that it finds "petitioner's 'opportunity' for full and fair litigation should not depend upon whether he has taken advantage of the process available. . . ."  Willett, 37 F.3d at 1271.   Further, "[t]he federal courts on habeas review of such claims are not to consider whether full and fair litigation of the claims in fact occurred in the state courts, but only whether the state provided an opportunity for such litigation."  Id. at 1273.

In this case, Petitioner had an opportunity, through <u>two</u> omnibus hearings at the state trial court level, to address his argument that the search of the trailer was unconstitutional.  The trial court issued a thorough memorandum deciding Petitioner's motion and ruling that the entry and search of the mobile home did not violate the Fourth Amendment.  <u>See</u> Appendix to Petition, p. A-11-14.  Further, Petitioner raised this claim in his appeal to the Minnesota Court of Appeals, as well as in his request to the Minnesota Supreme Court for review of the Court of Appeals decision.  <u>See</u> Appendix to Respondent's Memorandum Documents 1 and 6 [Docket No. 6]. There is nothing before this Court to suggest that Petitioner was foreclosed from using any procedure available to him to raise his Fourth Amendment claim arising out the seizure of evidence from the mobile home at the state court level, much less because of an unconscionable breakdown in the system.  Therefore, this Court finds that Petitioner is not entitled to relief on the first ground of his Petition.

### C.   <u>Petitioner's Double Jeopardy Claim</u>

Petitioner's second asserted ground for relief is that he was incorrectly sentenced to two concurrent sentences where his offenses constituted a single behavioral incident. Respondent argues that because Petitioner did not raise a constitutional sentencing argument before the Court of Appeals or in his request for review of the Court of Appeals decision, he is foreclosed from raising it now.

Federal habeas corpus review of a state criminal conviction is available only for claims involving federal constitutional issues.  The United States Supreme Court has repeatedly held that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, law or treaties

of the United States." Estelle v. McGuire, 502 U.S. 62, 67 (1991). See also Wainwright v. Goode, 464 U.S. 78, 83 (1983) (per curiam) ("[i]t is axiomatic that federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension").

It is also well established that a state prisoner cannot raise any federal constitutional claim for the first time in a federal habeas corpus petition.   A federal constitutional claim is reviewable in a federal habeas corpus proceeding only if that claim has already been fairly presented to, and decided on the merits by, the highest available state court.   The United States Supreme Court has explained this requirement as follows:

> "Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights.... (Citations omitted).  To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." (Citation omitted).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).  See also O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) ("[b]ecause the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts,... state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process").

A state prisoner seeking federal habeas relief is not required to have spelled out every nuance of his federal constitutional claims to the state courts, but he does have to give the state courts fair notice that there is indeed a federal constitutional dimension to his claims.  "If state courts are to be given the opportunity to correct alleged violations of

prisoners* federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution."  <u>Duncan v. Henry</u>, 513 U.S. 364, 365-66 (1995) (per curiam).

Petitioner's claim for relief – that he was denied due process because the trial court sentenced him twice for one offense – cannot be considered on the merits in this federal habeas corpus proceeding, because that claim has not been fairly presented to the Minnesota Supreme Court.  Petitioner challenged the sentence imposed by the trial court in his appeal to the Court of Appeals and in his Petition for Review by the Minnesota Supreme Court, but he did not challenge the constitutionality of that ruling, as he is now attempting to do here.  In his state court appeal, Petitioner contended only that the trial court misapplied Minnesota case law when it upheld Petitioner's multiple sentences.  Petitioner did not raise a constitutional due process claim in his direct appeal.  His appellate brief did not mention the federal Constitution, the Fifth Amendment (which contains the Double Jeopardy clause), the Fourteenth Amendment (which contains the Due Process clause) and it did not use the words "double jeopardy" or "due process."  Nor did Petitioner cite any federal case law that would have clearly apprised the Minnesota Supreme Court that he was raising a federal claim.  Rather, Petitioner relied exclusively on Minnesota authority in his appeal.  The decision of the Court of Appeals also relied solely on Minnesota authority.  If Petitioner intended to challenge the constitutionality of his sentence, he did not fairly present that challenge to the Minnesota Supreme Court.

The United States Supreme Court has expressly held that "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts... or that a somewhat similar state-law claim was made."  <u>Anderson v. Harless</u>, 459 U.S. 4, 7

(1982).  Likewise, the Eighth Circuit Court of Appeals has held, clearly and repeatedly, that a federal constitutional claim cannot be raised for the first time in a federal habeas corpus action, even if it is similar to a state-law claim that was previously raised in the state courts.   "Even if state law 'bears some relation to' federal constitutional requirements, 'habeas petitioners must have explicitly cited to the United States Constitution or federal case law in their direct [state court] appeal to preserve federal review.'"  Morris v. Norris, 83 F.3d 268, 270 (8th Cir. 1996), quoting Luton v. Grandison, 44 F.3d 626, 628 (8th Cir. 1994), cert. denied, 513 U.S. 1195 (1995).  See also McCall, 114 F.3d at 757 ("[m]ere similarity between the state claims and the federal  habeas claims is insufficient"), cert. denied, 517 U.S. 1172 (1996); Wyldes v. Hundley, 69 F.3d 247, 251 (8th Cir. 1995) ("[a]t a minimum,... the petitioner during direct appeal must have explicitly referred the state courts to the United States Constitution or federal case law"); McDougald v. Lockhart, 942 F.2d 508, 510 (8th Cir. 1991) ("[e]xplicit citation to the Constitution or to a federal case is necessary for fair presentation of a constitutional claim in state court").

Finally, Petitioner does not contend that he addressed his federal claim in his appeal; in fact, his Petition does not address at all whether he presented the constitutionality of his sentencing claim to the Minnesota Supreme Court.

Because Petitioner did not present his federal constitutional claim regarding his sentence to the Minnesota Supreme Court, that claim is not reviewable in a federal habeas corpus proceeding because it was not fairly presented to, and decided on the merits by, the highest available state court.  Therefore, this Court finds that Petitioner is not entitled to relief on the second ground of his Petition.

**<u>RECOMMENDATION</u>**

For the reasons set forth above, it is recommended that:

1.      Petitioner's application for habeas corpus relief under 28 U.S.C. § 2254 [Docket No. 1] be DENIED; and

2.      Respondent's Answer Motion to Dismiss Petition for Writ of Habeas Corpus [Docket No. 5] be GRANTED.

Dated:        February 15, 2008

*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before March 3, 2008 a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.